UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JUDI OLIVO,                                       :

            Petitioner,              :              05 Civ. 3237 (PKC) (AJP)

     -against-                       :              **REPORT AND RECOMMENDATION**

SUPERINTENDENT THORTON, Bayview          :
Correctional Facility,
                                                  :
           Respondent.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable P. Kevin Castel, United States District Judge:**

        Pro se petitioner Judi Olivo seeks a writ of habeas corpus from her April 2, 2001

conviction in Supreme Court, Bronx County, of first degree robbery and her sentence of ten years

imprisonment as a second felony offender.  (Dkt. No. 1: Pet. ¶¶ 1, 3-5.)   Olivo's habeas petition

claims that (1) she was denied her due process right to a fair trial, her right to present a defense and

her right to a jury trial when the trial judge refused to instruct the jury to consider the reasonableness

of the pre-trial identification procedure in assessing the victim's identifications of Olivo (Pet. ¶ 13

& Pet. Ex.: Olivo 1st Dep't Br. at 20-26);[1]/ and (2) her conviction was against the weight and

---

[1]/      In her habeas petition, Olivo asserts the same claims and arguments that she did in her appeal
         to the First Department by attaching her two First Department Briefs as exhibits to her
         habeas petition.

sufficiency of the evidence where the prosecution failed to prove (a) "either the operability of the weapon or that it was used or threatened to be used as a dangerous instrument" and (b) that the victim suffered physical injury (Pet. ¶ 13 & Ex.: Olivo Pro Se Supp. 1st Dep't Br. at 6-8).

For the reasons set forth below, Olivo's petition should be DENIED.

## FACTS

### The Prosecution's Case at Trial

On December 20, 1998 at 8:50 a.m., the complainant, Iris Otero, drove to the Chase Manhattan Bank at 3775 Riverdale Avenue in the Bronx. (Otero: Trial Transcript ["Tr."] 439.) Otero withdrew $20 from the bank's ATM machine and, as she walked back to her car, she saw Olivo crossing the street coming towards her. (Id. at 440.) Otero said "good morning" as she passed Olivo. (Id.) When Otero reached her car, Olivo pushed Otero into the side of the car so her back was to the car and she was facing Olivo. (Id. at 440, 471.) While holding a "box cutter" under Otero's chin, Olivo said "'Give me your money or I'll cut you.'" (Id. at 440, 445, 472.) Otero testified that she was "[s]cared for [her] life." (Id. at 448, 473.) Otero handed Olivo her bank card, receipt, $20 and car keys. (Id. at 440, 473-74.) Realizing that her year-old son was in the car, as Olivo started to walk away, Otero asked if she could have her keys back. (Id. at 439, 441, 445-46, 475.) Olivo tossed the keys and bank card at Otero's feet. (Id. at 441, 475-76.) Olivo unwrapped the receipt from around the money and said "'Shit, only $20.'" (Id. at 441, 446, 476.) Olivo "lunged forward with the blade" and cut Otero's neck, causing her to bleed. (Id. at 441, 476.) Otero thought

Olivo "was gonna kill" her at that point. (Id. at 448.) The entire incident took maybe thirty seconds. (Id. at 476.)

Olivo ran across the street, entered a car and drove north on Riverdale Avenue. (Id. at 441-43, 446, 477.) Otero flagged down a car that was coming down the street, told its occupants that she had been robbed and cut, and the men drove off to get help. (Otero: Tr. 442; Eiger: Tr. 535-39, 544.) A few minutes later, a police car with Officers Dronzek and Green arrived, along with emergency medical technicians who treated Otero's cuts. (Otero: Tr. 443; Dronzek: Tr. 605-06.) Otero declined to go to the hospital, but went to her personal doctor, who performed Hepatitis and HIV tests and administered a tetanus shot. (Otero: Tr. 443-44.) Otero's scar went away after a few days and she did not suffer any real pain. (Id. at 444.)

Otero testified that she saw Olivo's face a number of times throughout the robbery. The first time was just before the robbery when they passed one another and Otero said "good morning." (Id. at 444, 470.) Otero saw Olivo's face again when Olivo "was facing [her] with the blade pointed to [her] neck." (Id. at 444, 471.) Otero testified that at that moment they "were very close . . . [Olivo's] face was like practically in front of [Otero's] face." (Id. at 445, 474.) Otero again was "face to face" with Olivo when Olivo slashed at her. (Id. at 446.) Otero testified that throughout the robbery she had an unobstructed view of Olivo's face because Olivo had nothing on her face, not even make-up, and her hair was pulled back in a ponytail. (Id. at 446-47.)

Otero identified Olivo in court as her attacker. (Id. at 448, 468-69.)

**Otero's Different Descriptions of the Robber**

On December 20, 1998, the day of the robbery, Otero told Officer Dronzek that the robber was a white female, with dirty blond or light brown hair who "more or less is about your height, your build." (Otero: Tr. 454, 479-80; Dronzek: Tr. 606-07.) Officer Dronzek testified that Otero stated the robber "looked heavier than [her] . . . [a]pproximately 25 pounds" heavier. (Dronzek: Tr. 607, 610-11.) As Officer Dronzek is 5' 8" tall and 150 pounds, she stated in the police report that the attacker was 5' 8" and approximately 175 pounds. (Id. at 607-08, 611.)

On December 23, 1998, three days after the robbery, Otero described the robber to Detective Nicholas Mazzilli, stating that she was female, 5' 4" tall, 130 to 140 pounds, blond hair in a ponytail, mid-thirties, wearing a white pull-over knit sweater with a crew neck and pants. (Mazzilli: Tr. 617-18, 632-33; Otero: Tr. 453, 482.)[2]

On May 6, 1999, approximately four and a half months after the robbery, Officer Browne arrested Olivo for the robbery and contacted Otero to have her view a line-up. (Brown: Tr. 573, 581-82; Otero: Tr. 455-56, 482-83.) The line-up was comprised of Olivo and five other white female "fillers" with blond to brown hair. (Otero: Tr. 458, 488; Browne: Tr. 585-86, 594-95.) Because Olivo was pregnant, Officer Browne had the participants seated and covered with a sheet from neck to toe to hide weight and height differentials. (Browne: Tr. 586, 591; Otero: Tr. 489.) Otero testified that "[a]s soon as the curtain went up, [she] recognized" Olivo "immediately." (Otero:

---

[2] On May 6, 1999, when Olivo was arrested, she gave her height and weight as 5' 5" and 140 pounds. (Browne: Tr. 600-01.)

Tr. 459-60, 491; Browne: Tr. 601.) Otero also testified: "I picked her out because I recognized her from the day of the robbery" and "I'll never forget that face." (Otero: Tr. 468, 492.) Photographs of the lineup were admitted into evidence without objection. (Tr. 461-62, 468, 485-86, 534.)

**Pre-Charge Conference**[3]/

At the pre-charge conference, defense counsel requested that the judge give a "standard expanded ID charge" for a single witness identification from the New York Pattern Criminal Jury Instruction for a single witness identification case, CJI ¶ 10.01. (Tr. 658-59, 699-700; see also Tr. 550-51.) The judge agreed to "give an expanded eyewitness [identification] charge," but stated that he would use his own language and not the precise language requested by defense counsel. (Tr. 659-60, 696.) Defense counsel placed the requested CJI ¶ 10.01 in the record and the judge noted defense counsel's exception to the court's use of a modified charge. (Tr. 699-701.)[4]/

---

[3]/ At the conclusion of the prosecution's case, the defense moved to dismiss. (Tr. 657.) The trial judge denied the motion, stating: "The motion to dismiss – that's one count, I'm submitting robbery in the first degree – that motion is denied. There has been sufficient evidence that could be credited by the jury to make out the elements of the crime of robbery in the first degree. I cannot say it's a matter of law that the evidence is incredible, therefore, it's the responsibility of the jury to make the determination, not the Court." (Tr. 657-58.) The defense rested without putting on any case. (Tr. 660-62.) Defense counsel renewed his motion to dismiss at the close of all the evidence, and the judge again denied the motion. (Tr. 661.)

[4]/ At that time, CJI ¶ 10.01 provided:

CJI 10.01   IDENTIFICATION: EYEWITNESS

As you have become aware during the course of this trial, a main issue in this trial is the identification of the defendant, *[name]*, as the person who committed the crime of *[specify]* on or about *[date]*.

(continued...)

_____

(...continued)

As I have instructed you, the People have the burden to prove to your satisfaction beyond a reasonable doubt not only all of the essential elements of the crime, as I have instructed you, but also that the defendant, *[name]*, is the person who committed it. Even if you are convinced beyond a reasonable doubt that a serious crime has been committed, this does not end your deliberations. You must also be satisfied beyond a reasonable doubt that the defendant is the person who committed it.

You, the jury, are the sole judges of the rightness, indeed the certainty, of the identification. You must therefore examine with great care all of the evidence on the issue of identity. And, as you have been instructed, you must be convinced beyond a reasonable doubt that the defendant is the "right man," the man who in fact committed the crime; otherwise you must acquit him.

PART A

*[NOTE: Use Part A when there is no other evidence connecting the defendant with the commission of the offense except eyewitness identification testimony.]*

In this case, as you are now aware, the only evidence which in any way establishes or tends to establish that the defendant, *[name]*, is the actual perpetrator, i.e., the "right man," is the testimony of the eyewitness, *[name of witness]*. Apart from his testimony that the defendant is the "right man," there is no other evidence whatsoever which identifies the defendant as the perpetrator. In such case, the law requires that the jury be satisfied that identification testimony by *[name of witness]* is as certain as human recollection permits under the most favorable circumstances.

. . . .

It becomes your duty to examine with great care all of the circumstances surrounding the crime. For example, what were the lighting conditions at the scene of the crime? What was the distance between *[name of witness]* and the perpetrator? Did *[name of witness]* have an opportunity, during the commission of the crime, to observe and remember the facial features, the body size, the hair, skin color and the clothing of the

(continued...)

(...continued)

perpetrator?  How much time elapsed during the commission of the crime?  During that period of time, how long did the witness actually observe the perpetrator?   Did the perpetrator have distinctive features which an eyewitness would be likely to remember and recall?  What was the mental and emotional state of the witness?  These are some of the factors you must weigh in deciding whether the witness in fact had an opportunity to observe and, therefore, to remember, the perpetrator.

You must also evaluate the credibility of *[name of witness]* as you observed him while he testified in court.  You must evaluate his general intelligence, his capacity for observation, reasoning and memory, and determine whether you are satisfied that he is a reliable eyewitness who had the ability to observe, and the capacity to remember, the facial features, body, clothing and other characteristics of the perpetrator.

From your evaluation of the witness's opportunity during the commission of the crime to observe and remember the perpetrator's facial features, body features and clothing and upon your assessment of his ability to observe, to reason and to remember, you will determine whether you are satisfied beyond a reasonable doubt that the defendant is the "right man," i.e., the man who in fact committed the crime.  If you have a reasonable doubt whether the defendant is the one who committed the crime, you must find him not guilty.

You will understand that all of us, judge, prosecutor, the defense, and you, the jury, must be deeply concerned that no mistake in identification should result in the conviction and punishment of the "wrong man," of a defendant innocent of the crime.

. . . .

*[NOTE:* Pretrial Identification Evidence:

*The following instruction should be included in Part A or Part B, whenever there has been introduced in evidence by the People or by the defense, evidence of a prior "out-of-court" identification at a lineup or showup, or by means of a photo exhibited to him by the*
(continued...)

---

      (...continued)

*police.*

You will recall that the witness, *[name of witness]*, testified that, after the crime, he saw and identified the defendant at a lineup on *[date of prior identification]* at *[place of prior identification]*.

The evidence is that the crime charged was committed on *[date of commission]*. This trial is now being held *[number of months]* later. It is therefore relevant to establish that, shortly after the commission of the crime, while the witness's memory was perhaps fresher than at present, *[name of witness]* picked out and identified this defendant as the perpetrator of the crime at a lineup.

Such prior identification of the defendant, *[name of defendant]*, as the perpetrator may be considered by you together with all of the other relevant evidence, from whatever source, on identification in the case, in evaluating the accuracy of the witness's identification *here in court* of this defendant as the perpetrator of the crime charged.

I instruct you that the witness's prior identification of the defendant in the lineup should nevertheless be scrutinized by you with care. The People contend that such evidence tends to establish that the witness in identifying this defendant here in court as the perpetrator is not relying solely on his now, possibly stale, memory of the perpetrator on the date of the crime. However, the defendant contends that the witness, *[name of witness]*, was mistaken when he identified him as the perpetrator at the lineup – that because of such previous mistake, he is now identifying here in court *not* the actual perpetrator, but instead the defendant he mistakenly identified at the lineup.

[In other words, the defense contends that the "wrong man" is *now* on trial before you in this Court because *[name of witness]* made a mistake when he previously identified him as the perpetrator at the lineup.

Therefore, in making your decision whether the "right man" or the "wrong man" has been identified, it is important that you focus your attention principally on the circumstances surrounding the crime rather than what occurred after the crime. As I previously instructed you, you should focus

(continued...)

4/      (...continued)

principally on (1) the opportunity *[name of witness]* had during the crime to observe the physical features and other characteristics of the perpetrator and (2) your appraisal of the mental capacity of *[name of witness]* to reason and to remember what he observed.

. . . .

*[NOTE:* Summary:

*Whether Part A or Part B is used, and whether or not the foregoing special instructions are given, sum up as follows:]*

As I instructed you, the People have the burden to prove to your satisfaction beyond a reasonable doubt not only all of the essential elements of the crime charged but also, as I have just instructed you, that the defendant is the person, the "right man" who committed such crime.

If, after giving consideration, pursuant to my instructions, to all of the evidence in this case bearing on identification, you have a reasonable doubt whether this defendant is the person who committed the crime, you must find him "not guilty."

On the other hand, if on the basis of all such evidence, you are satisfied beyond a reasonable doubt that this defendant, *[name of defendant]* is the person who committed this crime, then you may find him guilty as charged [*or* you may find him guilty of such crime the evidence establishes he committed, in accordance with the instructions I have (*or* shall) give to you].

1 Committee on Criminal Jury Instructions, <u>Criminal Jury Instructions New York</u> ¶ 10.01 at 583-93 (1991) (references to showups and photo identifications omitted).

**Jury Charge**

In its charge to the jury, the trial judge pointed out that a "main issue at this trial is the identification of the defendant." (Charge: Tr. 725.) The trial judge instructed the jurors as to identification, as follows:

> [T]he law does permit a guilty verdict based on the testimony of one witness who identifies the defendant as the person who committed the charged crime. A guilty verdict is permitted, however, only if the evidence is of such sufficient quality to convince you beyond a reasonable doubt that all the elements of the charged crime have been proven and that the identification of the defendant is both truthful and accurate.
>
> Our system of justice is deeply concerned that no person who is innocent of a crime be convicted of it. In order to avoid that, the law requires a jury to consider the identification testimony with great care, especially when the only evidence to identify a defendant as a perpetrator comes from one witness.
>
> A main issue at this trial is the identification of the defendant, Judi Olivo, as the person that committed the crime of robbery in the first degree on December 20th, 1998.
>
> As I've already instructed you, the People have the burden to prove to your satisfaction beyond a reasonable doubt, not only the two essential elements of robbery in the first degree, but also that defendant, Judi Olivo, is the person who committed it, if you are convinced beyond a reasonable doubt that the crime was actually committed.
>
> You, the jury, are the sole judges of the correctness, indeed, the certainty of the identification. You must, therefore, examine with great care all the evidence on the issue of identity.
>
> And, as you've already been instructed, you must be convinced beyond a reasonable doubt that defendant is the right person, the woman who, in fact, committed the crime, otherwise, you must acquit her.
>
> In this case, as you are now aware, the only evidence which in any way establishes or tends to establish that defendant, Judi Olivo, is the actual perpetrator,

the right person, is the testimony of the eyewitness, the complainant, Miss Iris Otero. Apart from her testimony that defendant is the right person, there's no other evidence whatsoever that identifies the defendant as the perpetrator. In such case, the law requires that you, the jury, be satisfied that the identification testimony by Iris Otero is as certain as human recollection permits under the most favorable circumstances.

It becomes your duty to examine with great care all the circumstances surrounding the crime. For example: What were the lighting conditions at the scene of the crime. What was the distance between Iris Otero and the perpetrator. Did Iris Otero have an unobstructed view of the perpetrator. Did Iris Otero have an opportunity, during the commission of the crime, to observe and to remember the facial features, the body size, the hair, skin color and the clothing of the perpetrator. How much time elapsed during the commission of the crime. During that period of time, how long did Miss Otero actually observe the perpetrator. Did the perpetrator have distinctive features that an eyewitness would be likely to remember and, therefore, be able to recall. What was the mental and emotional state of Miss Otero. These are some of the factors you must weigh in deciding whether Miss Otero had an opportunity to observe and, therefore, to remember the perpetrator. Had Miss Otero seen the perpetrator prior to December 20th, 1998. What description did she give of the perpetrator to the police.

You must evaluate the credibility of Miss Otero as you observed her while she testified in court. You must evaluate her general intelligence, her capacity for observation and memory and determine whether you're satisfied that she is a reliable eyewitness who had the ability to observe and the capacity to remember facial features, body clothing and other characteristics of the perpetrator. From your evaluation of the witness' opportunity during the commission of the crime to observe and remember the perpetrator's facial features, body features and clothing and upon your assessment of her ability to observe, to reason and to remember, you will determine whether you are satisfied beyond a reasonable doubt that defendant is the right person, the person who, in fact, committed the crime.

If you have a reasonable doubt whether the defendant is the one who committed a crime, you must find her not guilty.

On the other hand, if you're satisfied beyond a reasonable doubt defendant is the right person, the person who, in fact, committed the crime and all the elements of the crime have been proven beyond a reasonable doubt, you must find her guilty.

Now, there was testimony that on May 6, 1999, Miss Otero viewed a line-up and she identified defendant, who was seated in seat number two, as the perpetrator . . . Now, the crime was committed on December 20th, 1998, . . . there was testimony that, within six months of the commission of the crime, Miss Otero picked out and identified defendant as a perpetrator at a line-up.

Now, before you consider the evidence of the eyewitness identification of defendant at the line-up, you must first be satisfied beyond a reasonable doubt that the line-up was a fair, non-suggestive line-up . . . in which the People in the line-up generally resemble each other. . . And the eyewitness is not picking out somebody because that person stands out from others, but picking out somebody because she remembers that person from the incident.

If you determine that the line-up is a suggestive and, therefore, unfair line-up, that is, that the eyewitness would select the defendant merely because she's different from the others and stands out from the others, then do not consider any evidence about the line-up itself, just concern yourself with the evidence about the incident itself . . . the manner in which the eyewitness observed the perpetrator, the description she gave of the perpetrator. Disregard all evidence about the line-up.

On the other hand if you find the line-up is a fair, non-suggestive line-up, you may consider evidence about the line-up together with other evidence in determining the issue of identification.

(Id. at 725-29.) Defense counsel objected to this instruction:

| THE COURT: | Mr. Davison, any exceptions to the charge? |
|---|---|
| MR. DAVISON [Defense Counsel]: | Just one. That your Honor mentioned, I didn't catch the exact wording, but something to the effect that, if the jury determines the line-up was unfair, they can still consider the court identification – the in-court identification. |
| THE COURT: | I didn't say the in-court identification |
| MR. DAVISON: | I heard something to that effect. |
| THE COURT: | I said consider the evidence surrounding December 20th at the time she viewed and all that as to that, not consider the line-up in any way. |

| | |
|---|---|
| MR. DAVISON: | Right. And I heard, and – |
| THE COURT: | I did not – |
| MR. DAVISON: | the jury should consider the description. Well, this is just my recollection. Just so I'm protected. |
| THE COURT: | I did not say consider the in-court identification. I did not say that. |
| MR. DAVISON: | Well, it was pretty fast, so I heard something to that effect. Just in case it was put on the record, my exception will be noted. |
| THE COURT: | I did not say that. And I was not that fast. The reporter was able to take all of it. |
| | Off the record. |
| | (Whereupon, a discussion was held off the record) |
| THE COURT: | Back on the record. |
| | Any further requests to charge, Mr. Davison? |
| MR. DAVISON: | No. |

(Tr. 734-35.)

## **Verdict and Sentence**

The jury found Olivo guilty of first degree robbery. (Verdict: Tr. 742-44.)

On April 2, 2001, the judge sentenced Olivo as a second felony offender to ten years imprisonment. See People v. Olivo, 4 A.D.3d 127, 770 N.Y.S.2d 867 (1st Dep't 2004).

**Olivo's Direct Appeal**

Olivo's direct appeal to the First Department raised the following issues: (1) she was denied her due process right to a fair trial, her right to present a defense and her right to a jury trial when the trial judge refused to instruct the jury to consider the reasonableness of the pre-trial identification procedure in assessing the victim's line-up and in-court identifications (Dkt. No. 10: A.D.A. Liu Aff. Ex. 1: Olivo 1st Dep't Br. at 20-26), and (2) her conviction was against the weight and sufficiency of the evidence where the prosecution failed to prove (a) "either the operability of the weapon or that it was used or threatened to be used as a dangerous instrument" and (b) that Ms. Otero, the victim, suffered physical injury. (Liu Aff. Ex. 3: Olivo Pro Se Supp. 1st Dep't Br. at 6-8.)

On February 5, 2004, the First Department affirmed Olivo's conviction, holding, in full:

> Defendant's challenge to the court's identification charge is unpreserved and we decline to review it in the interest of justice. Were we to review this claim, we would find that the court's thorough and detailed instructions conveyed the appropriate principles of law and properly directed the jury's attention to the pertinent issues surrounding the identification.
>
> We have considered and rejected the claims contained in defendant's pro se supplemental brief.

People v. Olivo, 4 A.D.3d 127, 127, 770 N.Y.S.2d 867, 868 (1st Dep't 2004) (citations omitted).

On April 20, 2004, the New York Court of Appeals denied leave to appeal. People v. Olivo, 2 N.Y.3d 764, 778 N.Y.S.2d 782 (2004).

**Olivo's Instant Habeas Petition**

On or about March 7, 2005, Olivo timely filed the instant petition for a federal writ of habeas corpus, asserting the same claims raised in her direct state appeal by resubmitting her First Department briefs to this Court.

## ANALYSIS

### I.     THE AEDPA REVIEW STANDARD[5/]

---

[5/]     For additional decisions by this Judge discussing the AEDPA review standard in language substantially similar to that in this entire section of this Report & Recommendation, see, e.g., Ellis v. Phillips, 04 Civ. 7988, 2005 WL 1637826 at *9-11 (S.D.N.Y. July 13, 2005) (Peck, M.J.); Murray v. Schultz, 05 Civ. 0472, 2005 WL 1523504 at *7-10 (S.D.N.Y. June 29, 2005) (Peck, M.J.); Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *14-17 (June 10, 2005 S.D.N.Y) (Peck, M.J.); Yapor v. Mazzuca, 04 Civ. 7966, 2005 WL 894918 at *9-11 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.), report & rec. adopted, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005) (Casey, D.J.); James v. Artus, 03 Civ. 7612, 2005 WL 859245 at *5-8 (S.D.N.Y. Apr. 15, 2005) (Peck, M.J.); Boyd v. Smith, 03 Civ. 5401, 2004 WL 2915243 at *5-7 (S.D.N.Y. Dec. 17, 2004) (Peck, M.J.); Curry v. Burge, 03 Civ. 0901, 2004 WL 2601681 at *8 (S.D.N.Y. Nov. 17, 2004) (Peck, M.J.); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *16 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.); Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *10 (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.), report & rec. adopted, 2005 WL 2431416 (S.D.N.Y. Oct. 3, 2005) (Castel, D.J.); Medina v. McGinnis, 04 Civ. 2515, 2004 WL 2088578 at *7-9 (S.D.N.Y. Sept. 20, 2004) (Peck, M.J.); Smalls v. McGinnis, 04 Civ. 0301, 2004 WL 1774578 at *11-13 (S.D.N.Y. Aug. 10, 2004) (Peck, M.J.); Gillespie v. Miller, 04 Civ. 0295, 2004 WL 1689735 at *6-8 (July 29,2004) (Peck, M.J.); Castro v. Fisher, 04 Civ. 0346, 2004 WL 1637920 (S.D.N.Y. July 23, 2004) (Peck, M.J.), report & rec. adopted, 2004 WL 2525876 (S.D.N.Y. Nov. 8, 2004) (Cote, D.J.); Del Pilar v. Phillips, 03 Civ. 8636, 2004 WL 1627220 at *7-9 (S.D.N.Y. July 21, 2004) (Peck, M.J.); Peakes v. Spitzer, 04 Civ. 1342, 2004 WL 1366056 at *8-10 (S.D.N.Y. June 16, 2004) (Peck, M.J.), report & rec. adopted, 2004 WL 1656568 (S.D.N.Y. July 23, 2004) (Berman, D.J.); Brown v. Fischer, 03 Civ. 9818, 2004 WL 1171277 at *4-6 (S.D.N.Y. May 27, 2004) (Peck, M.J.); Rodriguez v. Goord, 02 Civ. 6318, 2004 WL 540531 at *10-13 (S.D.N.Y. Mar. 19, 2004) (Peck, M.J.); Rodriguez v. Senkowski, 03 Civ. 3314, 2004 WL 503451 at *22-24 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.); Hernandez v. Filion, 03 Civ. 6989,
(continued...)

Before the Court can determine whether Olivo is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

5/      (...continued)
2004 WL 286107 at *8-10 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.), <u>report & rec. adopted</u>, 2004 WL 555722 (S.D.N.Y. Mar. 19, 2004) (Berman, D.J.); <u>Gomez</u> v. <u>Duncan</u>, 02 Civ. 0846, 2004 WL 119360 at *14-16 (S.D.N.Y. Jan. 27, 2004) (Peck, M.J.); <u>Montalvo</u> v. <u>Annetts</u>, 02 Civ. 1056, 2003 WL 22962504 at *12-14 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my earlier cases); <u>Larrea</u> v. <u>Bennett</u>, 01 Civ. 5813, 2002 WL 1173564 at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.), <u>report & rec. adopted</u>, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002) (Scheindlin, D.J.), <u>aff'd</u>, No. 02-2540, 368 F.3d 179 (table), 2004 WL 1094269 (2d Cir. May 18, 2004); <u>Mendez</u> v. <u>Artuz</u>, 98 Civ. 2652, 2000 WL 722613 at *22 (S.D.N.Y. June 6, 2000) (Peck, M.J.), <u>report & rec. adopted</u>, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000) (McKenna, D.J.), <u>aff'd</u>, 303 F.3d 411, 417 (2d Cir. 2002), <u>cert. denied</u>, 537 U.S. 1245, 123 S. Ct. 1353 (2003); <u>Fluellen</u> v. <u>Walker</u>, 97 Civ. 3189, 2000 WL 684275 at *10 (S.D.N.Y. May 25, 2000) (Peck, M.J.), <u>aff'd</u>, No. 01-2474, 41 Fed. Appx. 497, 2002 WL 1448474 (2d Cir. June 28, 2002), <u>cert. denied</u>, 538 U.S. 978, 123 S. Ct. 1787 (2003).

28 U.S.C. § 2254(d)(1)-(2).[6]

      The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 404-05, 120 S. Ct. at 1519.[7] Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 412, 120 S. Ct. at 1523.[8] "That federal law, as defined by the Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law

---

[6]     See also, <u>e.g.</u>, <u>Henry</u> v. <u>Poole</u>, 409 F.3d 48, 67 (2d Cir. 2005); <u>Howard</u> v. <u>Walker</u>, 406 F.3d 114, 121-22 (2d Cir. 2005); <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d 193, 197 (2d Cir. 2004); <u>Dallio</u> v. <u>Spitzer</u>, 343 F.3d 553, 559-60 (2d Cir. 2003), <u>cert. denied</u>, 124 S. Ct. 1713 (2004); <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting <u>Lainfiesta</u> v. <u>Artuz</u>, 253 F.3d 151, 155 (2d Cir. 2001), <u>cert. denied</u>, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[7]     Accord, <u>e.g.</u>, <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d 175, 181 (2d Cir.), <u>cert. denied</u>, 124 S. Ct. 962 (2003); <u>Jones</u> v. <u>Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000); <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d 113, 125 (2d Cir. 2000), <u>cert. denied</u>, 532 U.S. 943, 121 S. Ct. 1404 (2001); <u>Clark</u> v. <u>Stinson</u>, 214 F.3d 315, 320 (2d Cir. 2000), <u>cert. denied</u>, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[8]     Accord, <u>e.g.</u>, <u>Yarborough</u> v. <u>Alvarado</u>, 124 S. Ct. 2140, 2147 (U.S. 2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d 587, 591 (2d Cir. 2003), <u>cert. denied</u>, 124 S. Ct. 2171 (2004); <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d 1197, 1200 (2d Cir. 2002); <u>Yung</u> v. <u>Walker</u>, 341 F.3d 104, 109-110 (2d Cir. 2003); <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d 36, 42 (2d Cir.), <u>cert. denied</u>, 537 U.S. 909, 123 S. Ct. 251 (2002); <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d 178, 184 (2d Cir. 2001); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d 303, 309 (2d Cir. 2001).

or a bright-line rule designed to effectuate such a standard in a particular context." <u>Kennaugh</u> v.

<u>Miller</u>, 289 F.3d at 42. "A petitioner cannot win habeas relief solely by demonstrating that the state

court unreasonably applied Second Circuit precedent." <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 110; <u>accord</u>,

<u>e.g.</u>, <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . . A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

<u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[9/]

In <u>Williams</u>, the Supreme Court explained that "[u]nder the 'unreasonable application'

clause, a federal habeas court may grant the writ if the state court identifies the correct governing

legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the

facts of the prisoner's case." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 413, 120 S. Ct. at 1523.[10/] However,

---

[9/] Accord, <u>e.g.</u>, <u>Brown</u> v. <u>Payton</u>, 125 S. Ct. 1432, 1438-39 (2005); <u>Bell</u> v. <u>Cone</u>, 125 S. Ct. 847, 851 (2005); <u>Price</u> v. <u>Vincent</u>, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 123 S. Ct. at 1173-74; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d 210, 219 (2d Cir.), <u>cert. denied</u>, 126 S. Ct. 215 (2005); <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 42; <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 127-28.

[10/] Accord, <u>e.g.</u>, <u>Brown</u> v. <u>Payton</u>, 125 S. Ct. 1439; <u>Wiggins</u> v. <u>Smith</u>, 123 S. Ct. at 2534-35; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181.

"[t]he term 'unreasonable' is . . . difficult to define." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 410, 120 S. Ct. at 1522. The Supreme Court made clear that "an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." <u>Id</u>.[11] Rather, the issue is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 409, 120 S. Ct. at 1521.[12] "Objectively unreasonable" is different from "clear error." <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."). However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" <u>Jones</u> v. <u>Stinson</u>, 229 F.3d at 119

---

[11]     See also, e.g., <u>Yarborough</u> v. <u>Alvarado</u>, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 123 S. Ct. at 1853 ("As we have explained, 'a federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 219; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 124-25; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[12]     Accord, e.g., <u>Yarborough</u> v. <u>Alvarado</u>, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 123 S. Ct. at 1853; <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1174-75; <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. at 25-27, 123 S. Ct. at 360-61; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 125; <u>Ryan</u> v. <u>Miller</u>, 303 F.3d 231, 245 (2d Cir. 2002); <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 128-29.

(quoting <u>Francis S.</u> v. <u>Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000)).[13/]  "[T]he range of reasonable judgment can depend in part on the nature of the relevant rule." <u>Yarborough</u> v. <u>Alvarado</u>, 124 S. Ct. at 2149.[14/]

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 45.[15/]

---

[13/]    Accord, <u>e.g.</u>, <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 219; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197, 200-01; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 125; <u>Ryan</u> v. <u>Miller</u>, 303 F.3d at 245; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 110; <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184.

[14/]    The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

<u>Yarborough</u> v. <u>Alvarado</u>, 124 S. Ct. at 2149.

[15/]    Accord, <u>e.g.</u>, <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>see</u> <u>Yarborough</u> v. <u>Alvarado</u>, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.  There is force to this argument.  Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.  At the same time, the difference
(continued...)

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>accord</u>, <u>e.g.</u>, <u>Bell</u> v. <u>Cone</u>, 125 S. Ct. at 853.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

<u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d at 312; <u>accord</u>, <u>e.g.</u>, <u>Bell</u> v. <u>Cone</u>, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); <u>Early</u> v. <u>Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 220: <u>Wade</u> v. <u>Herbert</u>, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'" "Such a summary determination, even absent citation of federal case law, is a 'determination on the merits' and as such requires the deference specified by § 2254." Moreover, "[I]f any reasonable

---

<sup>15/</sup>    (...continued)
between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

ground was available [for the state court's decision], we must assume that the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition – the word 'denied' – triggered AEDPA deference.").[16] "By its terms, § 2254(d) requires such deference only

---

[16]     Accord, e.g., Cox v. Donnelly, 387 F.3d at 197 ("Neither the Appellate Division nor the New York Court of Appeals addressed [petitioner's] argument beyond a brief statement that the argument was without merit. In the absence of any expressed reasoning behind this conclusion, we turn directly to the facts of the case to determine whether Strickland was applied unreasonably."); Dallio v. Spitzer, 343 F.3d at 559-60; Parsad v. Greiner, 337 F.3d at 180-81; Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); Eze v. Senkowski, 321 F.3d at 121; Ryan v. Miller, 303 F.3d at 245; Aeid v. Bennett, 296 F.3d 58, 62 (2d Cir.), cert. denied, 537 U.S. 1093, 123 S. Ct. 694 (2002); Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002); Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001).

 The Second Circuit "recognize[d] that a state court's explanation of the reasoning underlying its decision would ease our burden in applying the 'unreasonable application' or 'contrary to' tests." Sellan v. Kuhlman, 261 F.3d at 312. Where the state court does not explain its reasoning, the Second Circuit articulated the analytic steps to be followed by a federal habeas court:

> We adopt the Fifth Circuit's succinct articulation of the analytic steps that a federal habeas court should follow in determining whether a federal claim has been adjudicated "on the merits" by a state court. As the Fifth Circuit has explained, "[W]e determine whether a state court's disposition of a petitioner's claim is on the merits by considering: (1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999).

(continued...)

with respect to a state-court 'adjudication on the merits,' not to a disposition 'on a procedural, or other, ground.' Where it is 'impossible to discern the Appellate Division's conclusion on [the relevant] issue,' a federal court should not give AEDPA deference to the state appellate court's ruling." Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir. 2003) (citations omitted).[17/] Of course, "[i]f there is no [state court] adjudication on the merits, then the pre-AEDPA, de novo standard of review applies." Cotto v. Herbert, 331 F.3d at 230.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); accord, e.g., Rosa v. McCray, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)).

---

[16/]    (...continued)
Sellan v. Kuhlman, 261 F.3d at 314; accord, e.g., Cotto v. Herbert, 331 F.3d at 230; Eze v. Senkowski, 321 F.3d at 121-22; Norde v. Keane, 294 F.3d at 410; Aparicio v. Artuz, 269 F.3d at 93; see also Dallio v. Spitzer, 343 F.3d at 560.

[17/]    The Second Circuit in Miranda v. Bennett continued: "Generally, when the Appellate Division opinion states that a group of contentions is either without merit 'or' procedurally barred, the decision does not disclose which claim in the group has been rejected on which ground. If the record makes it clear, however, that a given claim had been properly preserved for appellate review, we will conclude that it fell into the 'without merit' part of the disjunct even if it was not expressly discussed by the Appellate Division." Id. at 178.

**II.** **OLIVO'S CLAIM THAT HER CONSTITUTIONAL RIGHTS WERE VIOLATED BY THE COURT'S IDENTIFICATION JURY CHARGE SHOULD BE DENIED BECAUSE IT WAS DECIDED ON ADEQUATE AND INDEPENDENT STATE GROUNDS AND THEREFORE IS BARRED FROM FEDERAL HABEAS REVIEW, AND IN ANY EVENT LACKS MERIT**

### A.    Adequate and Independent State Ground Doctrine[18]

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the

---

[18]    For additional decisions by this Judge discussing the adequate and independent state ground doctrine in language substantially similar to that in this entire section of this Report and Recommendation, see, e.g., Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *22-23 (June 10, 2005 S.D.N.Y.) (Peck, M.J.); Yapor v. Mazzuca, 04 Civ. 7966, 2005 WL 894918 at *20-21 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.), report & rec. adopted, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005) (Casey, D.J.); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *17-18 (S.D.N.Y. Nov. 8, 2004)(Peck, M.J.); Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *21-23 (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.), report & rec. adopted, 2005 WL 2431416 (S.D.N.Y. Oct. 3, 2005) (Castel, D.J.); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *18-21 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.); Roberts v. Batista, 01 Civ. 5264, 2003 WL 1900866 at *7-11 (S.D.N.Y. Apr. 16, 2003) (Peck, M.J.); Rosario v. Bennett, 01 Civ. 7142, 2002 WL 31852827 at *18- 21 (S.D.N.Y. Dec. 20, 2002) (Peck, M.J.) (citing my prior decisions); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *8-9 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002) (Scheindlin, D.J.); Mercado v. Portuondo, 99 Civ. 11234, 2000 WL 1663437 at *12 (S.D.N.Y. Nov. 3, 2000) (Peck, M.J.), report & rec. adopted, 2001 WL 987926 (S.D.N.Y. Aug. 29, 2001) (Mukasey, D.J.), aff'd, No. 01-2701, 77 Fed. Appx. 546, 2003 WL 22134571 (2d Cir. Sept. 15, 2003); Owens v. Portuondo, 98 Civ. 6559, 1999 WL 378343 at *5 (S.D.N.Y. June 9, 1999) (Peck, M.J.), aff'd, No. 99-2416, 205 F.3d 1324 (table), 2000 WL 246226 (2d Cir. Feb. 22, 2000).

federal claim will result in a fundamental miscarriage of justice."  <u>Harris</u> v. <u>Reed,</u> 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations & internal quotations omitted).[19]

"[I]n order to preclude federal review [under the adequate and independent doctrine], the last state court to render judgment must 'clearly and expressly state [ ] that its judgment rest[ed] on a state procedural bar.'"  <u>Jones</u> v. <u>Vacco,</u> 126 F.3d at 415 (<u>quoting</u> <u>Glenn</u> v. <u>Bartlett,</u> 98 F.3d at 724).  The Second Circuit has made clear that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."  <u>Velasquez</u> v. <u>Leonardo,</u> 898 F.2d at 9; <u>accord, e.g.,</u> <u>Harris</u> v. <u>Reed,</u> 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").[20]  Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails

---

[19]     <u>See also, e.g.,</u> <u>Schlup</u> v. <u>Delo,</u> 513 U.S. 298, 314-16, 115 S. Ct. 851, 860-61 (1995); <u>Coleman</u> v. <u>Thompson,</u> 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); <u>Murray</u> v. <u>Carrier,</u> 477 U.S. 478, 485-88, 496, 106 S. Ct. 2639, 2644-45, 2649-50 (1986); <u>Jones</u> v. <u>Vacco,</u> 126 F.3d 408, 415 (2d Cir. 1997); <u>Garcia</u> v. <u>Lewis,</u> 188 F.3d 71, 76-77 (2d Cir. 1999); <u>Reyes</u> v. <u>Keane,</u> 118 F.3d 136, 138-40 (2d Cir. 1997); <u>Glenn</u> v. <u>Bartlett,</u> 98 F.3d 721, 724 (2d Cir. 1996), <u>cert. denied,</u> 520 U.S. 1108, 117 S. Ct. 1116 (1997); <u>Velasquez</u> v. <u>Leonardo,</u> 898 F.2d 7, 9 (2d Cir. 1990).

[20]     <u>See, e.g.,</u> <u>Garcia</u> v. <u>Lewis,</u> 188 F.3d at 77-82; <u>Glenn</u> v. <u>Bartlett,</u> 98 F.3d at 724-25; <u>see also, e.g.,</u> <u>Santiago</u> v. <u>People,</u> 97 Civ. 5076, 1998 WL 803414 at *4 (S.D.N.Y. Oct. 13, 1998) ("When the state court rejects a claim both on the merits and because it was waived under the state's procedural law, review of the claim on a federal habeas corpus petition is barred.").

reconsideration of the federal issue on federal habeas." Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10.

    **B.**    **Olivo's Claim That the Trial Judge's Identification Jury Charge Was Erroneous Is Procedurally Barred**

        The First Department ruled that Olivo's "challenge to the court's identification charge is unpreserved" and declined to review it in the interest of justice. People v. Olivo, 4 A.D.3d 127, 127, 770 N.Y.S.2d 867, 868 (1st Dep't 2004) (quoted at page 14 above). The First Department went on to state "[w]ere we to review this claim, we would find that the court's thorough and detailed instructions conveyed the appropriate principles of law and properly directed the jury's attention to the pertinent issues surrounding the identification." People v. Olivo, 4 A.D.3d at 127, 770 N.Y.S.2d at 868 (quoted at page 14 above).

        State courts are not required to use any particular language:

> We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim – every state appeal, every denial of state collateral review – in order that federal courts might not be bothered with reviewing state law and the record in the case.

Coleman v. Thompson, 501 U.S. 722, 739, 111 S. Ct. 2546, 2559 (1991).

        Furthermore, unlike the situation where the state court holds that claims were either unpreserved or without merit, which the Second Circuit has found is usually too ambiguous to preclude habeas review,[21] here the First Department explicitly stated that it found Olivo's claim to

---

[21]    See, e.g., Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) ("We have found a state court's reliance on a state procedural bar to be ambiguous, and thus refused to invoke a procedural
(continued...)

be "unpreserved," <u>People</u> v. <u>Olivo</u>, 4 A.D.3d at 127, 770 N.Y.S.2d at 868, and the fact that the First

Department also stated the conclusion it would reach on the merits "[w]ere [it] to review this claim,"

<u>id</u>., does not change the result.  <u>See, e.g.</u>, <u>Fama</u> v. <u>Comm'r of Corr. Servs.</u>, 235 F.3d 804, 810-11 &

n.4 (2d Cir. 2000) ("where a state court says that a claim is 'not preserved for appellate review' and

then ruled 'in any event' on the merits, such a claim is not preserved"); <u>Glenn</u> v. <u>Bartlett</u>, 98 F.3d at

724-25 & n.3 (state decision which denied prosecutorial misconduct claim as not preserved for

appellate review represented an independent and adequate state procedural ground even though court

addressed merits of claim "in the interests of justice"); <u>Velasquez</u> v. <u>Leonardo</u>, 898 F.2d 7, 9 (2d Cir.

1990) (state decision which denied claims as procedurally barred but then alternatively addressed

---

21/     (...continued)
        bar, where . . . the state court rejected defendant's claims on appeal as 'either meritless or
        unpreserved.'"); <u>Tankleff</u> v. <u>Senkowski</u>, 135 F.3d 235, 247 (2d Cir. 1998); <u>Reid</u> v.
        <u>Senkowski</u>, 961 F.2d 374, 377 (2d Cir. 1992).

merits rested on adequate and independent state grounds).[22]  Thus, the First Department's decision

---

[22]     See also, e.g., Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10; Yapor v. Mazzuca, 04 Civ. 7966, 2005 WL 894918 at *22 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.), report & rec. adopted, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005) (Casey, D.J.); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *18-19 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.); Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *23 (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.), report & rec. adopted, 2005 WL 2431416 (S.D.N.Y. Oct. 3, 2005) (Castel, D.J.); James v. Ricks, No. 01 CV 4106, 2003 WL 21142989 at *12 & n.8 (E.D.N.Y. Mar. 6, 2003) (state decision which "found the petitioner's ineffective assistance of counsel claim was procedurally barred and without merit" rested on adequate and independent state grounds.); Campos v. Portuondo, 193 F. Supp. 2d 735, 744 n.4 (S.D.N.Y. 2002) ("The language used by the Appellate Division in Campos' case is in contrast with the language used in those cases where the state court found a claim to be 'either meritless or unpreserved.' Unlike the conjunctive 'and,' the use of the disjunctive 'or' in such cases obviously does not clarify whether the court's ruling rests on a procedural bar."), aff'd, 320 F.3d 185 (2d Cir.), cert. denied, 540 U.S. 958, 124 S. Ct. 415 (2003); Figueroa v. Greiner, 02 Civ. 2126, 2002 WL 31356512 at *10 (S.D.N.Y. Oct. 18, 2002) (Peck, M.J.) (decision that claim is unpreserved but were it to be reviewed is without merit, sufficient for procedural bar); Velasquez v. Murray, 02 Civ. 2564, 2002 WL 1788022 at *8 (S.D.N.Y. Aug. 2, 2002) (Peck, M.J.); Soto v. Greiner, 02 Civ. 2129, 2002 WL 1678641 at *12 (S.D.N.Y. July 24, 2002) (Peck, M.J.); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *9 & n.8 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002) (Scheindlin, D.J.); Jones v. Duncan, 162 F. Supp. 2d 204, 211 (S.D.N.Y. 2001) (Peck, M.J.) ("The First Department's use of the conjunctive 'and' rather than the disjunctive 'or' clearly shows that the First Department found these claims to be unpreserved."). Martinez v. Greiner, 01 Civ. 2911, 2001 WL 910772 at *9 & n.9 (S.D.N.Y. Aug. 13, 2001) (Peck, M.J.), report & rec. adopted, 2003 WL 1936191 (S.D.N.Y. Apr. 23, 2003) (Mukasey, D.J.); Ferguson v. Walker, 00 Civ. 1356, 2001 WL 869615 at *8 & n.19 (S.D.N.Y. Aug. 2, 2001) (Peck, M.J.), report & rec. adopted, 2002 WL 31246533 (S.D.N.Y. Oct. 7, 2002) (Swain, D.J.); Simpson v. Portuondo, 01 Civ. 1379, 2001 WL 830946 at *10 (S.D.N.Y. July 12, 2001) (Peck, M.J.); Simmons v. Mazzuca, 00 Civ. 8174, 2001 WL 537086 at *10 (S.D.N.Y. May 21, 2001) (Peck, M.J.) (adequate and independent state ground even though First Department stated its conclusion as to merits of claims "were we to review" them); Yeung v. Artuz, 97 Civ. 3288, 2000 WL 145103 at *10 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.) (same); Cruz v. Greiner, 98 Civ. 7939, 1999 WL 1043961 at *12-13 (S.D.N.Y. Nov. 17, 1999) (Peck, M.J.) (claims First Department held to be "unpreserved and without merit" not cognizable on habeas review); Chisolm v. Headley, 58 F. Supp. 2d 281, 287 (S.D.N.Y. 1999) (Mukasey, D.J. & Peck, M.J.); Torres v. Irvin, 33 F. Supp. 2d 257, 274 (S.D.N.Y. 1998) (Cote, D.J. & Peck, M.J.) (adequate and independent ground even though First Department (continued...)

here unambiguously rested on a state procedural ground.[23/]

Under New York Law, "[a]s a general rule points which were not raised at trial may not be considered for the first time on appeal."  People v. Thomas, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584 (1980) (citing C.P.L. § 470.05(2)).[24/]  In order to preserve her erroneous jury charge claim for appellate review, Olivo was required to object at the time of the instructions.  See, e.g., C.P.L. § 470.05(2); People v. Autry, 75 N.Y.2d 836, 839, 552 N.Y.S.2d 908, 909 (1990); People v. Jackson, 76 N.Y.2d 908, 909, 563 N.Y.S.2d 42, 43 (1990); People v. Cadorette, 56 N.Y.2d 1007, 1009, 453 N.Y.S.2d 638, 638 (1982); People v. Battle, 15 A.D.3d 413, 790 N.Y.S.2d 477, 478 (2d Dep't) (failure to object to court's response to jury note renders claim unpreserved for appellate

---

[22/]    (...continued)
"went on to dismiss the [judicial misconduct] claim on the merits"); Williams v. Bennet, 97 Civ. 1628, 1998 WL 236222 at *6 (S.D.N.Y. Apr. 20, 1998); Vera v. Hanslmaier, 928 F. Supp. 278, 285 (S.D.N.Y. 1996) (Jones, D.J. & Peck, M.J.); Liner v. Keane, 95 Civ. 2738, 1996 WL 33990 at *7 (S.D.N.Y. Jan. 3, 1996) (Wood, D.J. & Peck, M.J.).

[23/]    The New York Court of Appeals denied Olivo's application for leave to appeal.  (See page 14 above.)  The Supreme Court held in Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590 (1991), with respect to unexplained orders, that federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Id. at 803, 111 S. Ct. at 2594.  Petitioner has presented no facts to rebut that presumption here.

[24/]    C.P.L. § 470.05(2) provides, in relevant part:

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

C.P.L. § 470.05(2).

review), appeal denied, 5 N.Y.3d 785, 801 N.Y.S.2d 806 (2005); People v. Field, 308 A.D.2d 548, 549, 764, N.Y.S.2d 839, 839 (2d Dep't), appeal denied, 1 N.Y.3d 571, 775 N.Y.S.2d 788 (2003); People v. Brunson, 1 A.D.3d 375, 766 N.Y.S.2d 601 (2d Dep't) (failure to object to court's charge on justification renders claim unpreserved for appellate review), appeal denied, 1 N.Y.3d 565, 569, N.Y.S.2d 786 (2003); People v. Williams, 297 A.D.2d 565, 566, 747 N.Y.S.2d 159, 159-60 (1st Dep't) (failure to object to supplemental instruction renders claim unpreserved for appellate review), appeal denied, 99 N.Y.2d 566, 754 N.Y.S.2d 218 (2002); People v. Mallory, 258 A.D.2d 343, 343, 685 N.Y.S.2d 663, 663 (1st Dep't), appeal denied, 93 N.Y.2d 876, 689 N.Y.S.2d 438 (1999); People v. Charleston, 56 N.Y.2d 886, 887-88, 453 N.Y.S.2d 399, 400 (1982).

Under New York law, a party's failure to specify the grounds for its general objection also renders its argument unpreserved for appellate review. E.g., People v. Everson, 100 N.Y.2d 609, 610, 767 N.Y.S.2d 389, 390 (2003) ("A party's failure to specify the basis for its general objection renders its argument unpreserved for [appellate] review."); People v. Clarke, 81 N.Y.2d 777, 778, 593 N.Y.S.2d 784, 785 (1993); People v. Vidal, 26 N.Y.2d 249, 254, 309 N.Y.S.2d 336, 340 (1970) ("A general objection, in the usual course, is to no avail when overruled if not followed by a specific objection directing the court, and the adversary, to the particular infirmity of the evidence."); People v. Freeman, 305 A.D.2d 331, 331, 760 N.Y.S.2d 470, 471 (1st Dep't), appeal denied, 100 N.Y.2d 594, 766 N.Y.S.2d 169 (2003); see generally C.P.L. § 470.05(2) (quoted in fn.24 above).

In this case, Olivo did not preserve her jury instruction claim for appellate review. At the pre-charge conference, Olivo's counsel requested that the trial judge use the Pattern Jury

Instruction language for single witness identification set forth in New York Criminal Jury Instructions, ¶ 10.01. (Quoted in fn.4 above.) The trial judge said he would give something similar to those instructions, but not use the PJI verbatim. (See page 5 above.) While Olivo's counsel objected, no specifics were provided. (See pages 12-13 above.) After the judge gave his charge to the jury, Olivo's counsel did not object to the fact that the judge's identification jury instruction did not include language instructing the jury that the suggestiveness of an unfair lineup could be used when evaluating Otero's in court identification of Olivo; the only comment made by counsel following the jury charge was that the judge had used the words "in-court identification" in its charge. (See pages 12-13 above.) However, the judge clarified that he had not, in fact, used those words, and defense counsel did not object to the failure to instruct the jury about the effect of any suggestive line-up procedure on the in-court identification. (See pages 12-13 above.) Thus, counsel failed to object before or after the charge on the basis raised on appeal (and in this habeas petition), i.e., the failure to charge that any unfairness in the lineup could be used by the jury in evaluating Otero's in-court identification of Olivo. Thus, the claim was not preserved for appellate review under New York law.

Both the Supreme Court and the Second Circuit have held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground. See, e.g., Wainwright v. Sykes, 433 U.S. 72, 86, 90, 97 S. Ct. 2497, 2506-08 (1977) (contemporaneous objection rule is an adequate and independent state ground); Murray v. Carrier, 477 U.S. at 485-92, 497, 106 S. Ct. at 2644-48, 2650 (same); Franco v. Walsh, No. 02-2377, 73 Fed. Appx. 517, 518, 2003 WL 22056234 at *2 (2d Cir. Sept. 4, 2003)

(finding petitioner's claim of an erroneous jury charge procedurally defaulted because "[n]o contemporaneous objection to the charge was lodged, and the Appellate Division found that the issue was therefore unpreserved."); Garcia v. Lewis, 188 F.3d at 79 ("we have observed and deferred to New York's consistent application of its contemporaneous objection rules") (citing Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (respecting state court's application of C.P.L. § 470.05(2) as adequate bar to federal habeas review), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995), & Fernandez v. Leonardo, 931 F.2d 214, 216 (2d Cir.) (noting that failure to object at trial constitutes adequate procedural default under C.P.L. § 470.05(2)), cert. denied, 502 U.S. 883, 112 S. Ct. 236 (1991)); Glenn v. Bartlett, 98 F.3d at 724-25 (failure to object constituted adequate and independent state ground); Velasquez v. Leonardo, 898 F.2d at 9 (violation of New York's contemporaneous objection rule is an adequate and independent state ground).[25]

---

[25] See also, e.g., Yapor v. Mazzuca, 2005 WL 894918 at *23 (failure to object to jury instruction constituted adequate and independent state ground); Otero v. Eisenschmidt, 2004 WL 2504382 at *20; Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *20 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.); Figueroa v. Greiner, 2002 WL 31356512 at *11-12 ("The Second Circuit has held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground."); Cooper v. LeFevre, No. 94 CV 5958, 1998 WL 386340 at *2 (E.D.N.Y. July 8, 1998) ("[T]he Second Department held that [the petitioner's claim was unpreserved because] the Petitioner violated the contemporaneous objection rule by failing to 'raise specific objections to the evidence . . . ' he cited in his appeal as having deprived him of a fair trial. . . . This Court finds that the Second Department's basis for denying Petitioner's claim was both independent of the federal question raised by such claim and adequate to support the judgment. As a result, this Court is procedurally barred from reviewing the merits of Petitioner's claim"); Jamison v. Smith, 94 Civ. 3747, 1995 WL 468279 at *2 (E.D.N.Y. July 26, 1995) ("Courts in this circuit have consistently held that the failure to object contemporaneously . . . constitutes an adequate and independent basis for barring habeas review.").

Because there is an adequate and independent finding by the First Department that Olivo procedurally defaulted on her jury instruction claim, Olivo would have to show in her habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. at 750, 111 S. Ct. at 2565.[26/] Olivo does not allege cause, prejudice or a fundamental miscarriage of justice. Thus, Olivo's jury instruction claim is procedurally barred.

### C. Olivo's Jury Instruction Claim is Without Merit

Even if Olivo's identification jury charge claim were not procedurally barred, it is without merit. The Court agrees with the First Department that the trial "court's thorough and detailed instructions conveyed the appropriate principles of law and properly directed the jury's attention to the pertinent issues surrounding the identification." People v. Olivo, 4 A.D.3d 127, 127, 770 N.Y.S.2d 867, 868 (1st Dep't 2004).

It is well-established that a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990)).

---

[26/] See also, e.g., Schlup v. Delo, 513 U.S. at 324-27, 115 S. Ct. at 865-67 (fundamental miscarriage of justice may be demonstrated by showing through "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence").

As the Second Circuit has stated:  "'In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law.'"  Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990) (quoting Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985)); accord, e.g., Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001); Sams v. Walker, 18 F.3d 167, 171 (2d Cir. 1994).[27/]  Failure to give a properly requested jury charge does not by itself violate a petitioner's right to due process.  E.g., Blazic v. Henderson, 900 F.2d at 541 ("A mere error of state law does not deny a defendant his right to due process.").[28/]  Moreover, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court."  Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736 (1977).

"For an erroneous state jury charge to result in a federal constitutional deprivation, 'the ailing instruction by itself [must have] so infected the entire trial that the resulting conviction violates due process.'"  Blazic v. Henderson, 900 F.2d at 541 (quoting Cupp v. Naughten, 414 U.S. at 147, 94 S. Ct. at 400); see also, e.g., Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985); Carmona v. Att'y Gen. of State of New York, 96 Civ. 8045, 1997 WL 876737 at *11 (S.D.N.Y. Oct. 7, 1997) ("Jury charges that contain errors, even if they lead to the jury misapplying state law, do not ordinarily give rise to federal habeas corpus relief in non-capital cases. . . . Rather, an erroneous jury

---

[27/]    See, e.g., Cupp v. Naughten, 414 U.S. 141, 146, 94 S. Ct. 396, 400 (1973).

[28/]    See also, e.g., Schaefer v. Leone, 443 F.2d 182, 185 (2d Cir.), cert. denied, 404 U.S. 939, 92 S. Ct. 277 (1971).

charge must have 'infected the entire trial' to be a cognizable claim in a habeas corpus proceeding."), report & rec. adopted, 1998 WL 213781 (S.D.N.Y. Apr. 29, 1998).

Pursuant to New York law, a jury charge on identification is an "'accurate statement of the law'" so long as the judge gives "'a general instruction on weighing witnesses' credibility and . . . states that identification must be proven beyond a reasonable doubt.'" Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) (quoting People v. Whalen, 59 N.Y.2d 273, 279, 464 N.Y.S.2d 454 (1983)); see also, e.g., People v. Knight, 87 N.Y.2d 873, 874-75, 638 N.Y.S.2d 938, 939 (1995) (identification charge was proper where the court instructed the jury on its duty to determine credibility and that it had to find each element of the crimes charged proven beyond a reasonable doubt, even though the trial court had not given the reasonable doubt charge specifically about identification because "[i]n People v. Whalen, . . . we considered a similar claim and stated that although an expanded identification charge was the 'better practice,' particularly when, as there, an alibi defense was presented, the failure to so charge did not constitute reversible error. Whether the charge is appropriate in an individual case is, we said, a matter for the Trial Judge's discretion."); People v. Smith, 203 A.D.2d 396, 396, 610 N.Y.S.2d 81, 82 (2d Dep't) (where the identification at issue was a show-up, trial judge's instructions on "weighing the witness' credibility, and . . . that identification must be proven beyond a reasonable doubt" were adequate to properly charge the jury on identification, citing People v. Whalen), appeal denied, 83 N.Y.2d 972, 616 N.Y.S.2d 25 (1994).

Here, the trial judge's identification charge, like the PJI charge, stressed that the prosecution was required to prove beyond a reasonable doubt that the defendant – Olivo – was the person who committed the crime. (See pages 10-12 above.) The judge instructed that the only

evidence against Olivo was Otero's identification. (See pages 10-12 above.) The judge instructed the jury consistent with the PJI to examine with care all of the circumstances surrounding the crime, including Otero's opportunity to observe Olivo, and that the jury had to evaluate Otero's credibility. (See pages 10-12 above.) The judge instructed as to the prior lineup identification and that the jury had to determine whether the lineup was fair and non-suggestive, and that if the jury found the lineup suggestive, that the jury should focus on the circumstances of the crime. (See pages 10-12 above.)

PJI ¶ 10.01 also contains a sentence that the lineup identification "may be considered by you together with all of the other relevant evidence, from whatever source, on identification in the case, in evaluating the accuracy of the witness's identification *here in court* of this defendant as the perpetrator of the crime charged." PJI ¶ 10.01 (1991).[29] Olivo contended on appeal (and incorporates that argument by reference here) that the judge erred in not instructing the jury that if the lineup was suggestive, they could consider that in evaluating Otero's in-court identification of Olivo. (Olivo 1st Dep't Br. at 20-26.) The context of the PJI language, however, appears to be that the witness's identification of the defendant in a lineup can be considered in general in evaluating the accuracy of the witness' identification of defendant, and not that an identification at a "suggestive" lineup should be considered in evaluating the witness' credibility, as Olivo now claims.

In any event, jury instructions are to be considered as a whole, and not with over-emphasis on a particular word or sentence in, or omitted from, the charge. See, e.g., DelValle v. Armstrong, 306 F.3d 1197, 1201 (2d Cir. 2002) (instruction must be viewed in context of the overall

---

[29] The current, significantly shorter, single witness identification PJI charge can be found online at www.nycourts.gov/cji/.

charge); <u>Bonilla</u> v. <u>Portuondo</u>, 00 Civ. 2369, 2004 WL 350694 at *8 (S.D.N.Y. Feb. 26, 2004) (trial judge's identification charge, viewed in the context of the charge as a whole, was fair), <u>report & rec. adopted</u>, 2004 WL 1782174 (S.D.N.Y. Aug. 9, 2004); <u>Fluellen</u> v. <u>Walker</u>, 97 Civ. 3189, 2000 WL 684275 at * 6 (S.D.N.Y. May 25, 2000) (Peck, M.J.) (citing <u>Cupp</u> v. <u>Naughten</u>, 414 U.S. at 146-47, 94 S. Ct. at 400); <u>Estrada</u> v. <u>Senkowski</u>, 98 Civ. 7796, 1999 WL 1051107 at *10-11 (S.D.N.Y. Nov. 19, 1999) (Pauley, D.J. & Peck, M.J.). The judge's identification charge as a whole did not misstate New York law, and certainly did not so infect Olivo's trial as to violate due process.

Olivo's identification jury charge habeas claim should be denied on adequate and independent state procedural grounds and, in the alternative, as without merit.

### III. OLIVO'S WEIGHT AND SUFFICIENCY OF THE EVIDENCE HABEAS CLAIMS SHOULD BE DENIED

#### A. A Weight of the Evidence Claim is not Cognizable on Habeas Review[30]

A challenge to a verdict based on the weight of the evidence differs from one based on the sufficiency of the evidence: "[T]he 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is

---

[30] For additional decisions authored by this Judge discussing weight of the evidence claims in language substantially similar to that in this entire section of this Report and Recommendation, <u>see</u> <u>Roman</u> v. <u>Filion</u>, 04 Civ. 8022, 2005 WL 1383167 at *30-31 (S.D.N.Y. June 10, 2005) (Peck, M.J.); <u>Brown</u> v. <u>Fischer</u>, 03 Civ. 9818, 2004 WL 1171277 at *6 (S.D.N.Y. May 27, 2004) (Peck, M.J.); <u>Rodriguez</u> v. <u>Senkowski</u>, 03 Civ. 3314, 2004 WL 503451 at *26-27 & n.33 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.); <u>Wilson</u> v. <u>Senkowski</u>, 02 Civ. 0231, 2003 WL 21031975 at *7-8 (S.D.N.Y. May 7, 2003) (Peck, M.J.); <u>Gutierrez</u> v. <u>Ricks</u>, 02 Civ. 3780, 2002 WL 31360417 at *4 (S.D.N.Y. Oct. 21, 2002) (Peck, M.J.); <u>Ventura</u> v. <u>Artuz</u>, 99 Civ. 12025, 2000 WL 995497 at *7-8 (S.D.N.Y. July 19, 2000) (Peck, M.J.).

based on federal due process principles." Garbez v. Greiner, 01 Civ. 9865, 2002 WL 1760960 at *8 (S.D.N.Y. July 30, 2002) (citing People v. Bleakley, 69 N.Y.2d 490, 515 N.Y.S.2d 761 (1987)).[31]

It is well-settled that a weight of the evidence claim is not cognizable on federal habeas review. E.g., Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . ."), cert. denied, 476 U.S. 1123, 106 S. Ct. 1991 (1986); Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) ("a writ of habeas corpus cannot be used to review the weight of evidence . . . "), aff'd, 263 U.S. 255, 44 S. Ct. 103 (1923); Garbez v. Greiner, 2002 WL 1760960 at *8 ("by raising a 'weight of the evidence' argument, [petitioner] does not present to this Court a federal claim as required by 28 U.S.C. § 2254(a). Instead, [petitioner] raises an error of state law,

---

[31] The New York Court of Appeals in Bleakley explained the difference as follows:

> Although the two standards of intermediate appellate review – legal sufficiency and weight of evidence – are related, each requires a discrete analysis. For a court to conclude . . . that a jury verdict is supported by sufficient evidence, the court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged. If that is satisfied, then the verdict will be upheld by the intermediate appellate court on that review basis.

> To determine whether a verdict is supported by the weight of the evidence, however, the appellate court's dispositive analysis is not limited to that legal test. Even if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further. If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony."

People v. Bleakley, 69 N.Y.2d at 495, 515 N.Y.S.2d at 763 (citations omitted).

which is not available for habeas corpus review."); Lemons v. Parrott, 01 Civ. 9366, 2002 WL 850028 at *3 (S.D.N.Y. May 2, 2002) ("[W]e have no authority to review a weight of the evidence argument because it is a state law claim."); McBride v. Senkowski, 98 Civ. 8663, 2002 WL 523275 at *4 n.2 (S.D.N.Y. Apr. 8, 2002) (weight of evidence is not cognizable on habeas review); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. Accordingly, the Court is precluded from considering the [weight of the evidence] claim.") (citations omitted); Peralta v. Bintz, 00 Civ. 8935, 2001 WL 800071 at *5 (S.D.N.Y. July 16, 2001) (Petitioner "raises only the state law issue of whether the weight of the evidence supported his conviction. Because [petitioner] raises no cognizable federal issue, his petition must be denied."); Kearse v. Artuz, 99 Civ. 2428, 2000 WL 1253205 at *1 (S.D.N.Y. Sept. 5, 2000) ("Disagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief."); Rodriguez v. O'Keefe, 96 Civ. 2094, 1996 WL 428164 at *4 (S.D.N.Y. July 31, 1996) ("A claim that the verdict was against the weight of the evidence is not cognizable on habeas review."), aff'd, No. 96-2699, 122 F.3d 1057 (table) (2d Cir. Sept. 9, 1997), cert. denied, 522 U.S. 1123, 118 S. Ct. 1068 (1998); see also, e.g., Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim; "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues").

Accordingly, Olivo's weight of the evidence habeas claim should be denied.

**B.** **The Evidence Was Sufficient to Convict Olivo of First Degree Robbery**

    **1.** **Legal Principles Governing Sufficiency of the Evidence Habeas Claims**[32/]

"'[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787 (1979) (quoting In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970)). However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 317, 99 S. Ct. at 2788. Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 – if the settled procedural prerequisites for such a claim have otherwise been satisfied – the applicant is entitled to habeas corpus relief if it is found that upon the record evidence

---

[32/]     For additional decisions authored by this Judge discussing the sufficiency of the evidence standard in habeas cases in language substantially similar to this section of this Report & Recommendation, see, e.g., Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *31-33 (S.D.N.Y. June 10, 2005) (Peck, M.J.); Castro v. Fisher, 04 Civ. 0346, 2004 WL 1637920 at *23-25 (S.D.N.Y. July 23, 2004) (Peck, M.J.); Brown v. Fisher, 03 Civ. 9818, 2004 WL 1171277 at *7-9 (S.D.N.Y. May 27, 2004) (Peck, M.J.); Rodriguez v. Goord, 02 Civ. 6318, 2004 WL 540531 at *13-14 (S.D.N.Y. Mar. 19, 2004) (Peck, M.J.); Rodriguez v. Senkowski, 03 Civ. 3314, 2004 WL 503451 at *27 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.); Besser v. Walsh, 02 Civ. 6775, 2003 WL 22093477 at *10-13 (S.D.N.Y. Sept. 10, 2003) (Peck, M.J.), report & rec. adopted, 2003 WL 22846044 (Dec. 2, 2003) (Kaplan, D.J.); Wilson v. Senkowski, 02 Civ. 0231, 2003 WL 21031975 at *8-9 (S.D.N.Y. May 7, 2003) (Peck, M.J.); Hediam v. Miller, 02 Civ. 1419, 2002 WL 31867722 at *11-14 (S.D.N.Y. Dec. 23, 2002) (Peck, M.J.) (citing my prior cases); Ferguson v. Walker, 00 Civ. 1356, 2001 WL 869615 at *4 (S.D.N.Y. Aug. 2, 2001) (Peck, M.J.), report & rec. adopted, 2002 WL 31246533 (S.D.N.Y. Oct. 7, 2002).

adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 324, 99 S. Ct. at 2791-92.[33/]

    The petitioner bears a very heavy burden:

> [T]he standard for appellate review of an insufficiency claim placed a "very heavy burden" on the appellant. Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt. In making this determination, we must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

United States v. Carson, 702 F.2d 351, 361 (2d Cir.) (citations omitted), cert. denied, 462 U.S. 1108, 103 S. Ct. 2456, 2457 (1983).[34/]

    The habeas court's review of the jury's findings is limited:

---

[33/]     Accord, e.g., Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000); Einaugler v. Supreme Court, 109 F.3d 836, 839 (2d Cir. 1997).

[34/]     Accord, e.g., Fama v. Comm'r of Corr. Servs., 235 F.3d at 811 ("petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence"); United States v. Middlemiss, 217 F.3d 112, 117 (2d Cir. 2000); United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000) ("a defendant shoulders a 'heavy burden' in challenging the sufficiency of evidence supporting a conviction"); United States v. Kinney, 211 F.3d 13, 16 (2d Cir. 2000), cert. denied, 531 U.S. 1079, 121 S. Ct. 778 (2001); United States v. Bicaksiz, 194 F.3d 390, 398 (2d Cir. 1999) (The defendant "bears a 'very heavy burden' in challenging the sufficiency of the evidence that led to his conviction. In considering any such challenge, we view all proof in the light most favorable to the government and draw all reasonable inferences in the government's favor.") (citations omitted), cert. denied, 528 U.S. 1161, 120 S. Ct. 1175 (2000); United States v. Russo, 74 F.3d 1383, 1395 (2d Cir.), cert. denied, 519 U.S. 927, 117 S. Ct. 293 (1996); United States v. Rosa, 11 F.3d 315, 337 (2d Cir. 1993) ("[T]he defendant who makes a sufficiency challenge bears a heavy burden."), cert. denied, 511 U.S. 1042, 1096, 114 S. Ct. 1565, 1864 (1994); United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993) (burden on defendant claiming insufficiency is "very heavy" and all inferences must be drawn in the government's favor).

[T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

Jackson v. Virginia, 443 U.S. at 318-19, 99 S. Ct. at 2789 (citations omitted).[35/]

The Jackson v. Virginia "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson v. Virginia, 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16; accord, e.g., Green v. Abrams, 984 F.2d 41, 44-45 (2d Cir. 1993) ("In considering a petition for a writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime.").

## 2. Application of the Standard to Olivo's Claim

Olivo argues that there was insufficient evidence to convict her of first degree robbery because the prosecution failed to prove (1) "either the operability of the weapon or that it was used or threatened to be used as a dangerous instrument" and (2) that Ms. Otero suffered physical injury. (Olivo Pro Se Supp. 1st Dep't Br. at 6-8.) The First Department reviewed Olivo's claims and found them to be without merit: "[w]e have considered and rejected the claims contained in defendant's

---

[35/] Accord, e.g., United States v. Middlemiss, 217 F.3d at 117; United States v. Kinney, 211 F.3d at 16; United States v. Russo, 74 F.3d at 1395 (quoting United States v. Martinez, 54 F.3d 1040, 1042-43 (2d Cir.), cert. denied, 516 U.S. 1001, 116 S. Ct. 545 (1995)); Mallette v. Scully, 752 F.2d 26, 31 (2d Cir. 1984).

pro se supplemental brief."   People v. Olivo, 4 A.D.3d 127, 127, 770 N.Y.S.2d 867, 868 (1st Dep't 2004).  The Court agrees that the claim lacks merit.

First, viewing the evidence in the light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that Olivo was guilty of first degree robbery.  To convict for first degree robbery, the evidence must show that the defendant "forcibly st[ole] property and . . . in the course of the commission of the crime or of immediate flight therefrom, . . . : [3] use[d] or threaten[ed] the immediate use of a dangerous instrument . . ." Penal Law § 160.15(3). At trial, the evidence showed that Olivo verbally threatened Otero while physically threatening her by holding a boxcutter or similar blade under her neck and stating:  "'Give me money or I'll cut you.'" (See page 2 above.)  Otero gave Olivo $20 in response to her threats, and when Olivo realized there was only $20, she turned and cut Otero's neck.  (See page 2 above.)  Penal Law § 160.15(3) does not require proof of physical injury and/or weapon operability;[36] the prosecution need only produce evidence of a forceful stealing by means of the use or threatened use of a dangerous instrument to secure a conviction for first degree robbery.

"'Dangerous instrument' means any instrument, article or substance, . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury."  Penal Law § 10.00(13).  A boxcutter or

---

[36]    First degree robbery can be proved in any of four ways.  Penal Law § 160.15(1) requires evidence of a  "serious physical injury" for conviction. Penal Law § 160.15(4) requires proof of an operable firearm for conviction.  Given Olivo's claims in her supplemental brief, she clearly believes that these elements were required to sustain her conviction under Penal Law § 160.15(3), but they are not – each subpart of § 160.15 is an independent basis to find a defendant guilty of first degree robbery (hence, the use of "or" in the subparts).

blade clearly is a "dangerous instrument." E.g., Harmon v. State of New York, No. 97-CV-2539, 2001 WL 1590522 at *2 (E.D.N.Y. Dec. 11, 2001) ("Knives are dangerous instruments for purposes of establishing Robbery in the First Degree."); People v. Thompson, 273 A.D.2d 153, 153, 710 N.Y.S.2d 333, 333 (1st Dep't), appeal denied, 95 N.Y.2d 908, 716 N.Y.S.2d 649 (2000); People v. Smith, 227 A.D.2d 197, 198, 642 N.Y.S.2d 249, 250 (1st Dep't), appeal denied, 88 N.Y.2d 969, 647 N.Y.S.2d 723 (1996); People v. Anderson, 204 A.D.2d 191, 192, 612 N.Y.S.2d 25, 26 (1st Dep't 1994) ("The knife or sharp object, [placed by defendant to the victim's throat], satisfied the dangerous instrument element of the crime" of first degree robbery.), appeal denied, 85 N.Y.2d 905, 627 N.Y.S.2d 328 (1995); People v. Gill, 191 A.D.2d 321, 322, 595 N.Y.S.2d 46, 47 (1st Dep't ) (razor blade was "dangerous instrument" sufficient to prove first degree robbery.), appeal denied, 81 N.Y.2d 1073, 601 N.Y.S.2d 592 (1993). Given the evidence presented at trial, a reasonable, properly instructed jury could find Olivo guilty of first degree robbery.

Second, the jury chose to credit Otero's testimony and convicted Olivo of robbing her. "[T]he jury is exclusively responsible for determining a witness' credibility." United States v. Strauss, 999 F.2d at 696 (citing United States v. Roman, 870 F.2d 65, 71 (2d Cir.), cert. denied, 490 U.S. 1109, 109 S. Ct. 3164 (1989)).[37/]

This Court may not reassess the jury's finding of credibility: "'[f]ederal habeas courts are not free to reassess the fact specific credibility judgments by juries or to weigh conflicting testimony. On collateral review this Court must presume that the jury resolved any questions of

---

[37/]     Accord, e.g., United States v. Rosa, 11 F.3d 315, 337 (2d Cir. 1993), cert. denied, 511 U.S. 1042, 1096, 114 S. Ct. 1565, 1864 (1994); Ferguson v. Walker, 00 Civ. 1356, 2002 WL 31246533 at *9 (S.D.N.Y. Oct. 7, 2002).

credibility in favor of the prosecution.'" <u>Vera</u> v. <u>Hanslmaier</u>, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (Peck, M.J.) (quoting <u>Anderson</u> v. <u>Senkowski</u>, No. CV-92-1007, 1992 WL 225576 at *3 (E.D.N.Y. Sept. 3, 1992), <u>aff'd mem.</u>, 992 F.2d 320 (2d Cir.1993)).[38]

Here, as in prior cases, "the jury's decision was largely a matter of choosing whether to believe [the defense's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses . . . We cannot say that no rational jury could have found guilt beyond a reasonable doubt on all the evidence." <u>Gruttola</u> v. <u>Hammock</u>, 639 F.2d 922, 928 (2d Cir. 1981). The fact that Otero was the only eyewitness and her testimony was the only evidence against Olivo, and/or that there may have been some inconsistencies between Otero's testimony and her prior statements, does not change the result. <u>See</u>, <u>e.g.</u>, <u>Gruttola</u> v. <u>Hammock</u>, 639 F.2d at 928 (rejecting insufficiency claim, holding that jury was entitled to believe prosecution witnesses despite inconsistencies in their testimony); <u>United States</u> v. <u>Danzey</u>, 594 F.2d 905, 916 (2d Cir.), <u>cert. denied</u>, 441 U.S. 951, 99 S. Ct. 2179 (1979) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction."); <u>Edwards</u> v. <u>Jones</u>, 720 F.2d 751, 755 (2d Cir. 1983) ("[T]his was 'not a case in which the sole witness was uncertain of his identification . . . [n]or is it one of testimony incredible as a matter of law.'"); <u>Means</u> v. <u>Barkley</u>, 98 Civ. 7603, 2000 WL 5020 at *4 (S.D.N.Y. Jan. 4, 2000) ("The testimony of a single uncorroborated

---

[38]    See also, e.g., <u>Huber</u> v. <u>Schriver</u>, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) ("[M]ost of petitioner's argument rests on the suggestion that the eyewitness testimony was not credible and should not have been given enough weight to result in his conviction. . . . However, under both the state law. . . and federal law, issues of credibility, as well as the weight to be given to evidence, are questions to be determined by the jury . . . . "); <u>Fagon</u> v. <u>Bara</u>, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (habeas court "is not free to make credibility judgments about the testimony presented at petitioner's trial or to weigh conflicting testimony").

witness is sufficient to achieve a showing of guilt beyond a reasonable doubt . . . even if that witness's testimony is less than entirely consistent. . . . The alleged inconsistencies in Mendez's description of Means's earring and facial hair are insufficient to undermine Mendez's testimony.").[39]

      Finally, the Court notes that the AEDPA has further limited this Court's role in determining sufficiency of the evidence habeas petitions. (See Point I above.) This Court cannot say that the First Department's decision that the evidence was sufficient to convict Olivo of robbery was contrary to established federal law or was based on an unreasonable determination of the facts.[40]

---

[39]    See also, e.g., Roman v. Filion, 2005 WL 1383167 at *32 (evidence sufficient although based on testimony of single eyewitness); Carromero v. Strack, 98 Civ. 3519, 1998 WL 849321 at *5 (S.D.N.Y. Nov. 19, 1998) (Peck, M.J.) (evidence sufficient where jury credited prosecution witnesses' testimony "despite some inconsistencies between their trial testimony and prior statements to the police and to the grand jury"); Davis v. Senkowski, No. 97-CV-2328, 1998 WL 812653 at *5 (E.D.N.Y. Aug. 6, 1998) ("The jury here chose to believe [the prosecution witness]'s testimony despite any inconsistencies in the testimony, and I will not reassess that decision."); Williams v. Bennet, 1998 WL 236222 at *5 ("Williams relies on inconsistencies in his victim's trial testimony as compared to her statements to the police, the District Attorney's office and before the grand jury. These inconsistencies were placed before the jury by the defense, which made them a central focus of its case. The jury's decision to credit [the victim]'s testimony, despite its inconsistencies, over Williams' testimony, is fully supported by the record."); Taxiarhopolous v. Spence, No. CV 92-0790, 1992 WL 403112 at *4 (E.D.N.Y. Dec. 28, 1992) (The petitioner "cannot show that the evidence was insufficient to support conviction. For example, he challenges the credibility of the main prosecution witness . . ., pointing to alleged inconsistencies in his testimony. This, however, was an argument made to, and properly resolved by, the trial jury.").

[40]    See, e.g., Ferguson v. Walker, 2002 WL 31246533 at *9-10 (applying AEDPA review standard to insufficiency of evidence claim); Simpson v. Portuondo, 01 Civ. 1379, 2001 WL 830946 at *9 (S.D.N.Y. Jul. 12, 2001) (Peck, M.J.) (same); Simmons v. Mazzuca, 00 Civ. 8174, 2001 WL 537086 at *9 (S.D.N.Y. May 21, 2001) (Peck, M.J.) (same); Huber v. Schriver, 140 F. Supp. 2d at 276-78 (same); Manning v. Walker, No. 99 Civ. 5747, 2001 WL 25637 at *5-6 (E.D.N.Y. Jan. 3, 2001) (same); Davis v. Keane, 97 Civ. 8328, 2000 WL 1041454 at *2-3 (S.D.N.Y. July 28, 2000) (same); Garvey v. Kelly, 104 F. Supp. 2d 169, 170-73 (W.D.N.Y. 2000) (same); Roldan v. Artuz, 78 F. Supp. 2d at 269-70 (same); Estrada

(continued...)

Olivo's insufficient evidence habeas claim should be denied.

## **CONCLUSION**

For the reasons discussed above, Olivo's habeas petition should be <u>DENIED</u> and a certificate of appealability should not be issued.

## **FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable P. Kevin Castel, 500 Pearl Street, Room 2260, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Castel. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert.</u>

---

[40]/    (...continued)
v. <u>Senkowski</u>, 98 Civ. 7796, 1999 WL 1051107 at *17-18 (S.D.N.Y. Nov. 19, 1999) (Pauley, D.J. & Peck, M.J.) (same); <u>see also</u>, <u>e.g.</u>, <u>Hurtado</u> v. <u>Tucker</u>, 245 F.3d 7, 14-20 (1st Cir.) (suggesting "guidelines as to some . . . of the principles in an insufficiency-of-the-evidence case to be used in making the evaluation of objective unreasonableness under § 2254(d)(1)"), <u>cert. denied</u>, 534 U.S. 925, 122 S. Ct. 282 (2001); <u>Romano</u> v. <u>Gibson</u>, 239 F.3d 1156, 1164-65 & n.2 (10th Cir.) (recognizing split in Tenth Circuit "as to whether under AEDPA, we review a sufficiency-of-the-evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1)"), <u>cert. denied</u>, 534 U.S. 1045, 122 S. Ct. 628 (2001).

H:\OPIN\OLIVO

denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank

v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small

v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd.,

838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATED:      New York, New York
            December 6, 2005

                                    Respectfully submitted,

                                    _____
                                    **Andrew J. Peck**
                                    United States Chief Magistrate Judge


Copies to:   Judi Olivo
             Hae Jin Liu, Esq.
             Judge P. Kevin Castel